UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DONNELL JOSEPH MACK,

    Plaintiff,

v.                                                 Case No. 17-cv-1638-pp

ZACHARY SCHROEDER, SERGEANT BAYS,
JASON WILKE, and LIEUTENANT TROCHINSKI,

    Defendants.

**ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), SCREENING THE PLAINTIFF'S COMPLAINT (DKT. NO. 1) AND DISMSSING CASE FOR FAILURE TO STATE A CLAIM**

Plaintiff Donnell Joseph Mack, a Wisconsin state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights by not letting him use the telephone and treating inmates differently. Dkt. No. 1. The plaintiff also filed a motion seeking leave to proceed without prepaying the filing fee. Dkt. No. 2.

**I.    Motion for Leave to Proceed without Prepayment of Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to let an incarcerated plaintiff to proceed with his lawsuit without prepaying the case filing fee, if he meets certain conditions. One of

those conditions is that the plaintiff pays an initial partial filing fee. 28 U.S.C. §1915(b).

On December 7, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $8.52. Dkt. No. 5. The court received that fee on December 27, 2017. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. The court will require the plaintiff to pay the remainder of the filing fee over time as set forth at the end of this decision.

## II.     Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  The complaint's allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  The Plaintiff's Allegations

At the time of the events in the complaint, the plaintiff was an inmate at Redgranite Correctional Institution (RCI). Dkt. No. 1 at 2. The plaintiff is suing defendants Unit Manager Zachary Schroeder, Sergeant Bays, Captain Jason Wilke and Lieutenant Trochinski, all of whom were employed at RCI. Id. at 1.

The plaintiff alleges that on September 1, 2017, Sergeant Bays would not let him use the telephone "when [he] was able to." Id. at 2. He says that Captain Wilke said that the plaintiff could not use the phone if Unit Manager Schroeder "enforced the rule that day," but the plaintiff says that the Wisconsin Administrative Code said that he could use the phone "on room confinement." Id. The plaintiff says that he talked to Lt. Trochinski to try to resolve the issue, but that Trochinski told the plaintiff that he "wasn't going to go over what the unit manager said." Id. at 3.

3

The plaintiff wrote an inmate complaint about the incident; he says that when he got it back, "on the complaint the warden stated that [he] was able to use the phone." Id. The plaintiff felt that the staff "other than the warden" were prejudiced against him, because they told him he could not do something that the warden and the complaint examiner said was okay. Id. He asserts that the staff at RCI should have known the rules. Id.

For relief, the plaintiff says that he wants "them" to abide by the rules and treat all inmates the same. Id. at 4. He says that the staff needs to be more professional, and that if they don't know the rules, "they need to be restrained or fired." Id. He also asks for $250,000 because the defendants made him feel worthless, and made him feel as if he was nobody and they had all the power. Id.

B. Discussion

The plaintiff alleges that on one occasion, Sergeant Bays and Captain Wilke denied him the right to use the telephone. "[P]risoners have a right under the First Amendment to communicate with others outside the prison . . . ." Boriboune v. Litscher, 91 Fed. App'x. 498, 499 (7th Cir. 2003) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). But that right is not unlimited—inmates do not have a right to unlimited telephone use. Washington v. Reno, 35 F. 3d. 1093, 1100 (7th Cir. 1994) (quoting Benzel v. Grammer, 869 F.2d 1105, 1008 (8th Cir.), cert. denied, 493 U.S. 895 (1989)).

> Instead, a prisoner's right to telephone access is "subject to rational limitations in the face of legitimate security interests of

the penal institution." *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986). "The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Fillmore v. Ordonez*, 829 F. Supp. 1544, 1563-64 (D. Kan. 1993), *aff'd*, 17 F.3d 1436 (10th Cir. 1994) . . . .

Id.

"Even those courts that have concluded that prisoners have some First Amendment right to telephone access have recognized that under *Turner v. Safley*, 482 U.S. 78, 89 . . . (1987), this right may be limited as long as the regulation is reasonably related to a legitimate penological interest." Boriboune, 91 Fed. App'x at 499 (citing Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000)).

The plaintiff does not allege that RCI had a policy or a regulation prohibiting inmates from using the phone. He implies that he was on room confinement the day this happened, but argues that the Wisconsin Administrative Code allows inmate on room confinement to use the phone.[1] Rather, the plaintiff alleges that on one single occasion, two members of the RCI staff—Bays and Wilke—violated the rules by denying him one use of the telephone. The plaintiff does not allege a First Amendment violation. At best, he has alleged that these two staff members violated prison regulations. The fact

---

[1] The plaintiff mentions "DOC 303," dkt. no. 1 at 2. Wis. Admin. Code §303 is the chapter of the code that prescribes discipline for various inmate offenses. He also mentions "the DOC 310," dkt. no. 1 at 2. Wis. Admin. Code §310 is the chapter of the administrative code that lays out the inmate complaint review process. The plaintiff has not identified a regulation that says that an inmate on room confinement can use the telephone.

that a staff member violates a prison rule does not establish that that staff member violated the Constitution, and a defendant is liable for civil rights violations under §1983 only if that staff member violated the plaintiff's constitutional rights.

The plaintiff's allegation might also implicate the due process clause of the Fourteenth Amendment. That amendment prohibits state actors from denying an inmate of a liberty interest without due process. But "[l]iberty interests arise only from jail policies that impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Smith v. Birkey, 447 Fed. App'x 744, 746 (7th Cir. 2011) (quoting Wilkinson v. Austin, 545 U.S. 209, 221-23 (2005), Sandin v. Conner, 515 U.S. 472, 484 (7th Cir. 2005)). The plaintiff has not alleged that he was denied the ability to use the phone because of a prison policy, and a single denial of the use of phone privileges is not an atypical and significant hardship. The Seventh Circuit has held that a demotion in status that causes an inmate to lose telephone privileges does not implicate a liberty interest. Id. (citations omitted). Without a deprivation of a liberty interest, the plaintiff cannot allege a due process claim.

Even if Bays and Wilke had deprived the plaintiff of a liberty interest, his own allegations show that he had a remedy for that denial. He filed an inmate complaint, and the complaint examiner and the warden concluded that he could use the phone. See Zinermon v. Burch, 494 U.S. 113, 126 (1990) (noting that a deprivation of an individual's liberty interest does not state a claim

under the Fourteenth Amendment due process clause if adequate state post deprivation remedies, including administrative remedies, exist).

In short, the one-time loss of phone privileges—even if the loss violated institution rules—does not implicate the Constitution. Hadley v. Peters, 1995 WL 675990, at *8 (7th Cir.1995) ("the denial of telephone privileges for ten days is not a matter of constitutional dimensions").

The plaintiff also says that he wants the defendants to treat inmates the same, implying that he believes they treated him differently from other inmates. This sounds like a Fourteenth Amendment, class-of-one equal protection claim. The equal protection clause of the Fourteenth Amendment "is most familiar as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." Geinosky v. City of Chi., 675 F.3d 743, 747 (7th Cir. 2012) (citations omitted). But the amendment also protects "individuals against purely arbitrary classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." Id. This is called a "class-of-one" equal protection claim. To allege such a claim, a plaintiff must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. (citation omitted). To avoid turning "ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits," however, the law requires that a plaintiff alleging a class-of-one claim must allege "a wrongful act that

7

necessarily involves treatment departing from some norm or common practice." Id. (citation omitted).

The plaintiff has not stated sufficient facts to allege a class-of-one equal protection claim. The "wrongful act" he identifies is a one-time denial of the use of the telephone. This act—a single error by prison staff—did not constitute treatment departing from a norm or common practice. He has not identified other prisoners similarly situated who were not denied phone privileges. He has not explained why he believes the defendants were discriminating against him, other than to say that they did not let him use the phone on one occasion. This is not sufficient to state a class-of-one equal protection claim.

Finally, the only allegation that the plaintiff makes against Schroeder is that Schroeder "enforced the rule," and the only allegation he makes against Trochinski is that Trochinski declined to disagree with Schroeder.

The court finds that the plaintiff has failed to state a claim upon which this court can grant relief. The court will dismiss the complaint.

## III. Conclusion

The court **ORDERS** that the plaintiff's motion for leave to proceed without prepayment of the filing fee is **GRANTED**. Dkt. No. 2.

The court **FURTHER ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $341.48 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited

8

to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution—county, state or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim. The clerk will enter judgment accordingly.

The court **ORDERS** that the clerk shall document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g)

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30** days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). A party must file any motion under Federal Rule of Civil Procedure 59(e) within **28** days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P.

6(b)(2). A party must file any motion under Federal Rule of Civil Procedure 60(b) within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court advises parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 30th day of August, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**